## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

REBECCA FARRIS,

       *Plaintiff,*

v.

JACK BURTON; and THOMAS CALEB
BOONE,

       *Defendants.*

Case No. 15-1286-EFM-GLR

## MEMORANDUM AND ORDER

Plaintiff Rebecca Farris seeks to recover damages against Defendants Jack Burton and Thomas Caleb Boone for violating her constitutional rights under the color of state law. She alleges that Defendants committed fraud on the Kansas Court of Appeals in concert with that same court. Farris filed her First Amended Complaint, and Boone filed an Answer. Burton filed a Motion to Dismiss (Doc. 22), which is now before the Court. Burton argues that the *Rooker-Feldman* doctrine prevents this Court from having subject-matter jurisdiction over this case. For the reasons discussed below, the Court agrees, grants Burton's Motion to Dismiss, and dismisses sua sponte Farris' claims against Boone.

### I.      Factual and Procedural Background

With two exceptions, the Court recounts the facts as alleged by Farris.

Farris and Burton were divorced on February 27, 2007. Boone was Burton's lawyer. The state trial court divided Farris and Burton's property and debt, giving Burton $772,626 in assets and $5,000 in debt and giving Farris $104,067 in assets and $115,000 in debt. After the divorce decree, Farris appealed to the Kansas Court of Appeals.

At the Kansas Court of Appeals, Burton raised for the first time in a cross-appeal brief that the division of marital property was inequitable to Burton because medical bills "which are still unpaid and are due and payable by [Burton] are $310,000.00." Burton reiterated this claim at oral argument. Farris recently discovered that prior to Burton's statements most, if not all, of the unpaid medical bills had already been taken care of. The bills had been forgiven, adjusted for financial assistance by hospital providers, or paid by third-party charities. So although Burton knew he did not have to pay these medical bills, he nonetheless claimed he still had to.

This evidence was "central to the appellate decision in affirming the trial court's judgment."[1] Burton and Boone "had set into motion an unconscionable scheme to interfere with the judicial system's ability to impartially adjudicate the matter." This "deliberatively planned and carefully executed scheme [was] intended to deceive and defraud the appellate court by invoking the sympathy of the court." This fraud was so successful that "in such fraudulent scheme the appellate panel members participated." The targets of the fraud, the appellate panel members, became perpetrators of fraud themselves. The court was willing "to accept such lies as the truth and [to] join defendants in their scheme and course of conduct by altering the record on appeal and misapply[ing] state law to defendant Burton's benefit." According to Farris, this means that Burton and Boone committed their fraud "in concert with the appellate court's

_____

[1] All quotations in this "Factual and Procedural Background" section are taken directly from Farris' complaint.

participation." This "resulted in the affirmation of [the] trial court's unlawful and grossly disparate division of property" on January 13, 2012.

Farris filed suit with this Court on September 23, 2015. She brings a claim under 42 U.S.C. § 1983 that, under color of state law, she was deprived of her constitutional property rights without due process of law. She also brings an unspecific "Kansas common law claim." Burton filed a Motion to Dismiss (Doc. 22), which is now before the Court. In his brief, Burton points out the following two facts that this Court will consider in addition to those alleged by Farris: (1) Farris petitioned the Kansas Supreme Court to review the Kansas Court of Appeals decision, and (2) on February 19, 2013, the Kansas Supreme Court denied her petition, prior to her filing her present federal case.

## II.     Legal Standard

Under Federal Rule of Civil Procedure Rule 12(b)(1), a claim may be dismissed for "lack of jurisdiction over the subject matter."[2] A federal court must have a statutory or constitutional authority to hear the case in order to satisfy its limited subject-matter jurisdiction.[3] Because it has limited jurisdiction, a federal court presumes a lack of jurisdiction.[4] Plaintiffs bear the burden of alleging sufficient facts to overcome this presumption.[5]

Rule 12(b)(1) motions generally take two forms.[6] The first form is a facial attack on the complaint's allegations as to subject-matter jurisdiction.[7] In reviewing this form, the Court must

---

[2] Fed. R. Civ. P. 12(b)(1).

[3] *See* U.S. Const. art. III; *Sheldon v. Sill*, 49 U.S. 441, 448–49 (1850).

[4] *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

[5] *Id.*

[6] *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).

accept the allegations in the complaint as true.[8] The second form is a factual attack, which goes beyond the allegations in the complaint, and challenges the facts upon which subject-matter jurisdiction depends.[9] When reviewing a factual attack, the Court may not presume the truthfulness of the complaint's factual allegations.[10] Instead, the Court has wide discretion to review outside documents, such as affidavits.[11]

Under either form of attack, subject-matter jurisdiction is established through (1) diversity jurisdiction or (2) federal-question jurisdiction.[12] Diversity jurisdiction requires that the amount in controversy claimed by each plaintiff exceeds $75,000 and that each defendant is a resident of a different state than each plaintiff.[13] For federal question jurisdiction to apply, "the plaintiff's cause of action must be either (1) created by federal law, or (2) if it is a state-created cause of action, its resolution must necessarily turn on a substantial question of federal law."[14] Once federal question jurisdiction applies to one or more claims, it is also "within the trial court's discretion to exercise supplemental jurisdiction over those state law claims that derive from a common nucleus of facts."[15] Under the *Rooker-Feldman* doctrine, however, even when federal

---

[7] *Id.* at 1002.

[8] *Id.*

[9] *Id.* at 1003.

[10] *Id.*

[11] *Id.*

[12] *See* U.S. Const. art. III.; 28 U.S.C. §§ 1331–1332.

[13] *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013).

[14] *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003).

[15] *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000); *see also* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall

question, diversity, or supplemental jurisdiction might otherwise be established, federal district courts do not have jurisdiction to engage in appellate review of final state-court judgments.[16]

## III.    Analysis

Farris has submitted a very confused complaint.[17] She claims that Defendants committed fraud upon the Kansas Court of Appeals and that the Kansas Court of Appeals joined the Defendants in their fraud. In other words, the Kansas Court of Appeals, according to Farris, is somehow both a target of the Defendants' fraud and an accomplice in the fraud. She says she "does not seek review of the Kansas state district court or appellate court decisions," but she spends much of the complaint alleging how the courts misapplied Kansas law and got the merits of the case wrong too. Her legal theory is unclear because she does not explain how the Defendants violated her rights under color of state law. Although for the purposes of this motion, the Court accepts Farris' factual allegations as true, the Court notes that she does not specify how she came to know that Burton's statements are false. In the jurisdiction portion of her complaint, Farris says she "brings a Kansas common law claim" in addition to her § 1983 claim, but she never specifies what that common law claim is.

Farris first brings a claim under 42 U.S.C. § 1983 against Burton and Boone, alleging that they, under the color of state law, deprived Farris of her constitutional property rights without

---

have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

[16] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 476 (1983); 28 U.S.C. § 1257 (giving such appellate jurisdiction only to the U.S. Supreme Court).

[17] The Court notes that Farris, although not a lawyer, has written legal memoranda in the past and had lawyers sign off on her work. *See In re Marriage of Farris-Burton & Burton*, 2012 WL 139268, at *1, 266 P.3d 1253 (Kan. Ct. App. Jan. 13, 2012) (unpublished table opinion). After reviewing the documents Farris has submitted in this case, the Court cannot be sure whether they were written or merely signed off on by an experienced lawyer.

due process of law.[18] Second, Farris brings a Kansas common law claim. Although Farris has not specified what this common law claim is, presumably she meant a fraud-on-the-court claim, since her complaint elsewhere uses language to that effect.[19] Farris claims her § 1983 claim invokes federal question jurisdiction and her Kansas fraud-on-the-court claim invokes supplemental jurisdiction.

Burton's motion to dismiss is a factual attack on the complaint's allegations as to subject-matter jurisdiction because it adds to Farris' facts. Burton does not dispute any other facts on which subject-matter jurisdiction depends, so the Court will accept the undisputed allegations in the complaint as true, but will also consider the Kansas Supreme Court's denial of Farris' petition for review. For the reasons discussed below, the Court finds that (1) both of Farris' claims are barred by the *Rooker-Feldman* doctrine, and (2) alleging fraud on the court does not remove these claims from the *Rooker-Feldman* doctrine's bounds.

## A.  The *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, federal district courts cannot engage in appellate review of final state-court judgments.[20] *Rooker-Feldman* applies only to suits filed after state proceedings are final.[21] State-court proceedings are final for purposes of *Rooker-Feldman* (1) if

---

[18] 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .").

[19] K.S.A. § 60-260(d)(3) (recognizing and not limiting "a court's power to . . . set aside a judgment for fraud on the court").

[20] *See Rooker*, 263 U.S. at 416; *Feldman*, 460 U.S. at 476; 28 U.S.C. § 1257.

[21] *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 n.12 (10th Cir. 2013).

the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the highest state court in which review is available has denied review of the case, (3) if the state action has reached a point where neither party seeks further action, or (4) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated.[22]

The *Rooker-Feldman* doctrine means that federal courts cannot exercise subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[23] The *Rooker-Feldman* doctrine applies if "the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*."[24] "In other words, an element of the claim must be that the state court wrongfully entered its judgment."[25]

But "[w]hen the state-court judgment is not itself at issue, the *Rooker-Feldman* doctrine does not prohibit federal suits regarding the same subject matter, or even the same claims, as those presented in the state-court action."[26] "*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not

---

[22] *See Id.* at 1232 n.12 (listing each of these scenarios except for the highest state court denying review as situations where a state-court judgment is final); *Erlandson v. Northglenn Mun. Ct.*, 528 F.3d 785, 788 n.3 (10th Cir. 2008) (holding a state-court judgment as final when the highest state court denied review).

[23] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[24] *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (emphasis in original).

[25] *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012). *Campbell* also thought it best "to follow the Supreme Court's lead" and avoid the old "inextricably intertwined" language, which the Supreme Court eschewed in *Exxon Mobil. Id.*

[26] *Id.* at 1281.

rest on any allegation concerning the state-court proceedings or judgment."[27] "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."[28]

"The fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment."[29] In making this determination, the redress sought by the plaintiff can reveal the nature of the claim the plaintiff brings.[30] If the only redress the plaintiff seeks is an "undoing" of the prior state-court judgment, such as monetary damages that put the plaintiff back in the position they occupied prior to the state-court judgment, then *Rooker-Feldman* applies.[31] If, however, the plaintiff seeks only prospective relief to prevent future judgments of the same kind, *Rooker-Feldman* does not apply.[32]

---

[27] *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1193 (10th Cir. 2010).

[28] *Exxon Mobil*, 544 U.S. at 293.

[29] *Sigg v. Dist. Ct. of Allen Cty.*, No. 11–2625, 2012 WL 941144, at *5 (D. Kan. Mar. 20, 2012) (quoting *Bisbee v. McCarty*, 3 F. App'x 819, 822–23 (10th Cir. 2001))

[30] *See Kenmen Eng'g v. City of Union*, 314 F.3d 468, 477 (10th Cir. 2002), *abrogated on other grounds by Exxon Mobil*, 544 U.S. at 292 (holding *Rooker-Feldman* doctrine inapplicable to parallel state and federal litigation), and by *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (holding *Rooker-Feldman* doctrine inapplicable to suits brought by nonparties to the earlier state-court judgment). The Tenth Circuit later clarified the partial abrogation by *Exxon Mobil*, saying that "[u]nder *Exxon Mobil*, *Rooker-Feldman* applies only to suits filed after state proceedings are final." *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006).

[31] *Kenmen*, 314 F.3d at 477.

[32] *See Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237–38 (10th Cir. 2006).

Further, the *Rooker-Feldman* doctrine applies independent of preclusion law principles.[33] So *Rooker-Feldman* applies "regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims."[34] "[C]onsideration of whether a federal-court plaintiff lacked an opportunity to previously litigate her claims in a state-court proceeding is only relevant insofar as it informs the analysis of whether the federal-court plaintiff is a 'non-party' . . . ."[35] Because the preclusion law concept of privity also does not apply to *Rooker-Feldman*, if the federal-court plaintiff is a 'non-party' to the state-court proceeding, then *Rooker-Feldman* does not apply.[36]

In *Kenmen Engineering v. City of Union*, the plaintiff was barred by *Rooker-Feldman* from pursuing a § 1983 claim over a forced sale of magnesium at lower than market price as directed by a court order.[37] The plaintiff alleged this constituted an unlawful taking of property without due process of law.[38] This suit was barred because the monetary injury, which came after the order and pursuant to the order, was caused by the order.[39]

In *Campbell v. City of Spencer*, the plaintiff was not barred by *Rooker-Feldman* from pursuing a § 1983 claim over an allegedly illegal search and seizure of horses committed prior to

---

[33] *See Exxon Mobil*, 544 U.S. at 280–81, 283–84, 293 (correcting confusion in federal district and appellate courts by saying preclusion law principles do not apply to analysis under the *Rooker-Feldman* doctrine, and noting that "[p]reclusion, of course, is not a jurisdictional matter").

[34] *In re Smith*, 287 F. App'x 683, 685 (10th Cir. 2008) (quoting *Kenmen*, 314 F.3d at 478).

[35] *Id.* (quoting *Kenmen*, 314 F.3d at 478 n. 9).

[36] *Lance*, 546 U.S. at 466.

[37] *Kenmen*, 314 F.3d at 472, 482.

[38] *Id.* at 472.

[39] *Id.* at 477–78.

a court order legitimizing the search and seizure.[40] This was because the injury, the search and seizure, was not caused by the order, since the search and seizure happened before the state-court proceedings even began.[41] "She could raise the same claims even if there had been no state-court proceedings."[42]

In *Mo's Express, LLC v. Sopkin*, the plaintiffs were not barred by *Rooker-Feldman* from pursuing a declaratory judgment enjoining the Colorado Public Utilities Commission (PUC) from taking particular enforcement actions against them in the future.[43] Although a previous state-court judgment upheld prior penalties by the PUC, including against one of the federal plaintiffs, the *Rooker-Feldman* doctrine did not apply because the federal plaintiffs had "requested only prospective injunctive and declaratory relief" that would not undo the prior monetary penalties.[44]

**B.  *Sigg* and Farris' Claims**

In *Sigg v. District Court of Allen County*, the plaintiff brought suit after a state divorce proceeding did not go as he wanted.[45] He appealed to the Kansas Court of Appeals, which upheld the District Court's judgment.[46] The Kansas Supreme Court denied his request for appeal.[47] He

---

[40] *Campbell*, 682 F.3d at 1285.

[41] *Id.*

[42] *Id.*

[43] *Mo's Express*, 441 F.3d at 1237–38.

[44] *Id.*

[45] *Sigg*, 2012 WL 941144, at *1.

[46] *Id.*

[47] *Id.*

then brought to this Court a § 1983 claim and a fraud-on-the-court claim for monetary damages, alleging that the defendants conspired to steal money from him and deprived him of due process using the court system as their front.[48]

This Court found that it lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine.[49] Among the reasons given for this holding, the Court found that: (1) the injury alleged was directly related to the judgment rendered by the state court; (2) the only redress sought was monetary damages; (3) to grant these damages the Court would have to review the state-court judgment and determine that it was wrongly entered and void; and (4) the plaintiff challenged the state-court order itself as being in error and part of a conspiracy.[50] The plaintiff protested that the *Rooker-Feldman* doctrine did not apply because "there is simply no other court in America who can hear a case involving a state's continued theft of property by lawyers and judges who have used the legal system to carry out their crime."[51] This Court responded by saying, "[t]his argument is unavailing and only bolsters the defendant's argument that [the plaintiff] has sought relief in this court simply to overturn the state courts' earlier decisions."[52]

Here, Farris brings suit after a state divorce proceeding did not go as she wanted. She appealed to the Kansas Supreme Court, which upheld the District Court's judgment. The Kansas Supreme Court denied her petition for appeal. Because the highest state court in which review

---

[48] *Id.* at *1, *5.

[49] *Id.* at *5–*6.

[50] *Id.*

[51] *Id.* at *5.

[52] *Id.*

was available denied review of the case, the state-court divorce judgment is a final state-court judgment.[53]

Farris claims that Burton's actions "resulted in the affirmation of [the] trial court's unlawful and grossly disparate division of property." So, as in *Sigg*, the injury Farris alleges is directly related to the judgment rendered by the state court. The only redress sought is monetary damages, which is an attempt to undo the divorce decree's allocation of property and reallocate it differently. To grant these damages the Court would have to review the state-court judgment and determine that is was wrongly entered and void, so an element of Farris' claims is that the state court wrongfully entered its judgment. Also, as in *Sigg*, Farris challenges the state-court order itself as being in error and part of a concerted joint fraud.

Similar to the plaintiff's protests in *Sigg*, Farris insists that *Rooker-Feldman* does not apply because "[o]therwise there would be no federal remedy other than an appeal to the U.S. Supreme Court, and that remedy would be ineffective because plaintiff could not present evidence showing that the judicial proceeding had been a farce." Farris' statement, especially the phrase "there would be no federal remedy other than an appeal to the U.S. Supreme Court," bolsters the argument that Farris has sought relief in this Court simply to overturn the state courts' earlier decisions. Federal courts are courts of limited jurisdiction. Because of this, some claims simply have no federal remedy, but must be pursued in state court. Farris' current claims are included in this category.[54] Just as in *Sigg*, the *Rooker-Feldman* doctrine prevents this Court from having jurisdiction over Farris' claims.

---

[53] *See Erlandson*, 528 F.3d at 788 n.3.

[54] Farris' claims, at their core, are attempting to undo a state court judgment made on state law grounds. Farris cannot appeal to the U.S. Supreme Court even if she alleges a constitutional violation. In reviewing a state

But Farris argues as follows that *Sigg* does not apply to this case:

> Burton fails to note that *Sigg* . . . has nothing to do with plaintiff's fraud on the court claim. *Sigg* involved "intrinsic" fraud litigated at the Kansas district or trial court level. Plaintiff's fraud on the court claim involves "extrinsic" fraud on the court that occurred at the appellate level, where no fact-finding may be made nor evidence taken. Plaintiff was left helpless except for her federal remedy asserted here.

Farris has not cited any authority for her statements, and the Court finds them unconvincing. According to Farris, she alleges extrinsic fraud but the plaintiff in *Sigg* alleged intrinsic fraud, so *Sigg* should not apply.[55] The Tenth Circuit has never conditioned the

---

court judgment, the U.S. Supreme Court will not pass upon the constitutionality of a state action before the state courts have had an opportunity to do so. *See Adler v. Bd. of Educ. of N.Y.C.*, 342 U.S. 485, 496 (1952), *abrogated on other grounds*, *Keyishian v. Bd. of Regents of Univ. of N.Y.*, 385 U.S. 589, 593-95, 605-06 (1967). Therefore, Farris cannot raise a federal issue on her appeal that would satisfy the requirements of the Supreme Court's appellate jurisdiction. *See* 28 U.S.C. § 1257.

[55] Intrinsic fraud includes fraudulent instruments, perjured evidence, or any other fraudulent matter which was actually presented and considered in the original action. *See Muncrief v. Mobil Oil Co.*, 421 F.2d 801, 803 n.2 (10th Cir. 1970); *United States v. Throckmorton*, 98 U.S. 61, 66 (1878). Extrinsic fraud, on the other hand, "prevents a party from having a trial or from presenting his cause of action or his defense, or induces him to withdraw a defense, or operates upon matters pertaining not to the judgment itself, but to the manner in which it was procured." *Muncrief*, 421 F.2d at 803 n.2. The Tenth Circuit once used this distinction to determine whether res judicata applies. *See Id.* at 803 (finding jurisdiction over an extrinsic fraud claim even though "[a]ppellees . . . argue[d] . . . res judicata"); *Salvation Army v. Morris*, 421 F.2d 805, 808 (10th Cir. 1970) (finding jurisdiction over an extrinsic fraud claim, saying "it is no disservice to the principle of res judicata"); *see also Throckmorton*, 98 U.S. at 65–69 (distinguishing intrinsic and extrinsic fraud for purposes of preclusion, allowing independent actions for extrinsic fraud, but not for intrinsic fraud). "Res judicata" can refer to "claim preclusion" or to both types of preclusion— "claim preclusion" and "issue preclusion." *Allen v. McCurry*, 449 U.S. 90, 94 n.5 (1980).

It is now unclear whether the Tenth Circuit continues to make this distinction for purposes of res judicata. *See Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972) (noting that "Rule 60(b)(3) . . . abolishes the distinctions between extrinsic and intrinsic fraud"); Fed. R. Civ. P. 60(b)(3), (d) (allowing motions to set aside a judgment for fraud, "whether previously called intrinsic or extrinsic," without limiting independent actions for fraud); *see also* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2868, 562–63 (4th ed. 2008) (saying "[t]he distinction rests on clouded and confused authorities, its soundness as a matter of policy is very doubtful, and it is extremely difficult to apply. It ought not to persist as a limit on independent actions now that it has been abolished for motions."); James Wm. Moore & Elizabeth B.A. Rogers, *Federal Relief from Civil Judgments*, 55 Yale L.J. 623, 658 (1946) (saying "at times it is a journey into futility to attempt a distinction between extrinsic and intrinsic matter"). Regardless, res judicata is a separate matter from the *Rooker-Feldman* doctrine. *Exxon Mobil*, 544 U.S. at 280–81, 283–84, 293.

application of *Rooker-Feldman* on the distinction between intrinsic and extrinsic fraud.[56] So Farris' fraud distinction will not alter the Court's *Rooker-Feldman* analysis.[57]

## C. Fraud-on-the-Court Claims and Rooker-Feldman

Apart from unconvincingly arguing *Sigg*'s dissimilarities, Farris argues that a claim alleging fraud on the court is an "independent claim" unbarred by the *Rooker-Feldman* doctrine. She says the fraud-on-the-court cases she cites, such as *Hazel-Atlas*, are proof that her "legal theory of fraud on the court . . . has been apart [sic] of federal jurisdiction since 1944." But the cases Farris cites all involve the power of a *federal* court to hear cases alleging fraud on a *federal*

---

[56] *See West v. Evergreen Highlands Ass'n*, 213 F. App'x 670, 674 n.3 (10th Cir. 2007) (noting that "[t]his circuit has not held *Rooker-Feldman* may be circumvented by a collateral attack" on the grounds of fraud, deception, accident, or mistake).

[57] Even if the distinction mattered for purposes of *Rooker-Feldman*, the fraud alleged in this case is intrinsic fraud, just like in *Sigg*, not extrinsic fraud as suggested by Farris. The fraud alleged here is a deceptive statement to the state court first made in a party's appellate brief. Farris admits that this statement was presented (in Burton's cross-appeal brief and in Burton's oral argument) and considered in the judgment of the appellate court (it was "central to the appellate decision"), which makes it fall within the definition of intrinsic fraud.

In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*—a case that Farris relies on heavily elsewhere in her brief—a falsified professional article, deceptively referred to for the first time in a party's appellate brief, provided grounds to vacate an earlier federal judgment on a theory of fraud on the court. *Hazel-Atlas*, 322 U.S. 238, 247, 251 (1944), *overruled on other grounds, Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 18 & n.2 (1976). Although the Supreme Court did not specifically state whether this was intrinsic or extrinsic fraud, it has been considered intrinsic fraud by several courts. *See Browning v. Navarro*, 826 F.2d 335, 344 (5th Cir. 1987) (summarizing the holding of *Hazel-Atlas* as allowing "a judgment to be attacked on the basis of intrinsic fraud that results from corrupt conduct by officers of the court"); *United States v. Frank*, 520 F.2d 1287, 1292 (2d Cir. 1975) (citing *Hazel-Atlas* as an example of "the powers of a court to prevent intrinsic fraud on it"); *George P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 47 n.3 (1st Cir. 1995) (saying *Hazel-Atlas* "avoided the extrinsic/intrinsic labels"); *In re Intermagnetics Am., Inc.*, 926 F.2d 912, 916 (9th Cir. 1991) (saying "[t]he fraud in *Hazel–Atlas Glass* involved the introduction of fraudulent evidence, and the court did not find it necessary to distinguish between extrinsic and intrinsic fraud in setting aside the judgment"). *But see Hazel-Atlas*, 322 U.S. at 261 n.18 (Roberts, J., dissenting) (saying "[a]ny fraud connected with the preparation of the Clarke article in this case was extrinsic"; this footnote is notably the only place in *Hazel-Atlas* where the words extrinsic and intrinsic are used); *Thomas v. Hunter*, 78 F.Supp. 925, 931 (D. Kan. 1948) (saying "the decision [in *Hazel-Atlas*] is based on the assumption that the fraud complained of was extrinsic fraud" and saying that the *Hazel-Atlas* opinion "was careful to again point out that there was a distinction between extrinsic fraud and intrinsic fraud"); *Josserand v. Taylor*, 159 F.2d 249, 253 (C.C.P.A. 1946) (saying "we think it is clear from the decision in [*Hazel-Atlas*] that the court was of opinion that the fraud therein referred to was extrinsic"); *Dowdy v. Hawfield*, 189 F.2d 637, 638 (D.C. Cir. 1951) (saying *Hazel-Atlas* did not change the old distinction between extrinsic and intrinsic fraud).

court.[58] "Only the court that had jurisdiction over the original judgment . . . can provide relief from that judgment through an independent action."[59] This Court is not the court that had jurisdiction over the original judgment. Rather, the state court was. So the state court is the only court in this case that can provide relief from the judgment through an independent action. Fraud-on-the-court claims, including Farris', do not dodge *Rooker-Feldman*.

Farris also cites *Nesses v. Shepard* for the proposition that *Rooker-Feldman* does not apply if a party "so far succeeded in corrupting the state judicial process as to obtain a favorable judgment."[60] As a Seventh Circuit case, *Nesses* is not binding precedent on this Court. Its persuasive value, moreover, is undermined by the fact that Farris has not provided any analysis

---

[58] *Hazel-Atlas*, 322 U.S. at 239, 251 (holding a federal appellate court can vacate its own judgment because of fraud); *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 579–80 (1946) (saying the same); *Throckmorton*, 98 U.S. at 62, 65–66 (saying a circuit court could vacate a district court judgment because of fraud); *Bulloch v. United States*, 763 F.2d 1115, 1116, 1122 (10th Cir. 1985) (setting aside a district court's order, which had vacated the district court's own judgment for fraud); *Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514, 516, 541 (3d Cir. 1948) (vacating its own appellate judgment, vacating the district court's judgment, and directing dismissal of case because of fraud at the appellate level); *Robinson v. Audi Aktiengesellschaft*, 56 F.3d 1259, 1260 (10th Cir. 1995) (affirming a district court's denial of a motion to set aside its judgment for fraud); *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1117–18 (6th Cir. 1976) (same).

[59] *Atkins v. Heavy Petroleum Partners, LLC*, 635 F. App'x 483, 489 (10th Cir. 2015); *see also United States v. Beggerly*, 524 U.S. 38, 45–46 (1998) (noting that an "independent action" for fraud "may be regarded as ancillary to the prior suit, so that the relief asked may be granted *by the court which made the decree in that suit* . . . . The bill, though an original bill in the chancery sense of the word, is a continuation of the former suit, on the question of the jurisdiction of the [court]" (emphasis added)); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (noting that a federal court's inherent power is what "allows a federal court to vacate *its own judgment* upon proof *that a fraud has been perpetrated upon the court*" (emphasis added)); *Crosby v. Mills*, 413 F.2d 1273, 1275–76 (10th Cir. 1969) (holding that jurisdiction for a fraud on the court claim is ancillary to the jurisdiction for the original claim); *Universal Oil Prods. Co.*, 328 U.S. at 580 ("The *inherent power* of a federal court to investigate whether a judgment was obtained by fraud, is beyond question" (emphasis added)); *West*, 213 F. App'x at 674 n.3 (noting that "[t]his circuit has not held that *Rooker-Feldman* may be circumvented by a collateral attack" on the grounds of fraud, deception, accident, or mistake); 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2868, 566–67 (4th ed. 2008) (saying "[t]he normal procedure to attack a judgment should be by motion in the court that rendered the judgment"); *Toucey v. N.Y. Life Ins. Co.*, 314 U.S. 118, 136 (1941) (calling the foundation of a line of earlier Supreme Court cases allowing federal courts to entertain collateral attacks on state court judgments "very doubtful"). *But see Marshall*, 141 U.S. at 601 (allowing an independent action to collaterally attack a state judgment for fraud); *Ex parte Simon*, 208 U.S. 144, 147–48 (1908) (same); *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 179–80, 189 (1920) (same).

[60] *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995).

regarding how *Nesses* applies to this case. And the Tenth Circuit has referred to this part of *Nesses* as "dicta."[61]

The Court does not believe the Tenth Circuit would follow the dicta's exception to *Rooker-Feldman* for corrupting the state judicial process. As discussed above, a federal court does not have subject-matter jurisdiction to hear equitable collateral attacks on a state-court judgment.[62] So—as long as the state-court judgment stands—collateral attacks based on a party corrupting the state judicial process are properly brought only in state court.

For these reasons, the Court finds that *Nesses* cannot control Farris' case. Alleging fraud on the court does not let Farris dodge the *Rooker-Feldman* doctrine.

## IV.    Conclusion

Both of Farris' claims are barred by the *Rooker-Feldman* doctrine because an element of her claims is that the state-court judgment was wrongfully entered and the monetary redress sought would be an undoing of that judgment. Extrinsic fraud is not an exception to the *Rooker-Feldman* doctrine, so Farris saying the alleged fraud is extrinsic does not remove her claims from the *Rooker-Feldman* doctrine's bounds. Only the state court has jurisdiction to hear an equitable

---

[61] *Bisbee*, 3 F. App'x at 823 n.1. Still, *Nesses*' dicta cites precedent binding on this Court. But a close examination of that precedent convinces the Court not to follow *Nesses*. *Nesses* cites the U.S. Supreme Court case *Dennis v. Sparks* as an example of *Rooker-Feldman* not applying when a party "so far succeeded in corrupting the state judicial process as to obtain a favorable judgment." But in *Dennis* a state appellate court had already overturned the state court's judgment. *Dennis v. Sparks*, 449 U.S. 24, 24 (1980). There was no judgment left to attack, so the plaintiff's § 1983 claim did not attack any judgment. So for that reason *Rooker-Feldman* would not apply. *See Id. Nesses*' proposed exception to *Rooker-Feldman* is thus unnecessary to explain the holding in *Dennis*.

*Nesses* also cites the Tenth Circuit case *Robinson v. Maruffi* for the same proposition. But in *Maruffi* the plaintiff had been acquitted by the state court in a second trial before he brought his § 1983 claim. *Robinson v. Maruffi*, 895 F.2d 649, 653 (10th Cir. 1990). As in *Dennis*, there was no judgment left to attack, so the plaintiff's § 1983 claim did not attack any judgment, and on those grounds *Rooker-Feldman* would not apply. *See Id.* Again, Nesses' proposed exception to Rooker-Felman for corrupting the state judicial process is thus unnecessary to explain the holding in both Dennis and Maruffi.

[62] *Atkins*, 635 F. App'x at 489.

collateral attack on a state-court judgment, so Farris cannot dodge the *Rooker-Feldman* doctrine by alleging fraud on the court. Farris' claims against Burton must be dismissed for lack of subject-matter jurisdiction.

For the same reasons and because the Court must dismiss an action sua sponte when it determines that it lacks subject-matter jurisdiction, Farris' claims against Boone, the non-moving defendant, must also be dismissed.[63]

**IT IS THEREFORE ORDERED** that Burton's Motion to Dismiss (Doc. 22) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Farris' claims against Boone are dismissed sua sponte for lack of subject-matter jurisdiction.

**IT IS SO ORDERED**.

Dated this 27th day of July, 2016

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[63] *See Robertson v. Meinig*, 138 F. App'x 58, 59–60 (10th Cir. 2005); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").